**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARY DUNN, | : | |
| | : | |
| | : | Civil Action No. 11-3900 (MAS) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JOHNSON & JOHNSON, and JOHNSON | : | **MEMORANDUM OPINION** |
| & JOHNSON LONG TERM DISABILITY | : | |
| PLAN, | : | |
| | : | |
| Defendants. | : | |

**SHIPP, District Judge**

This matter comes before the Court upon a Motion for Summary Judgment filed by Plaintiff Mary Dunn ("Dunn" or "Plaintiff"). (Dunn's Mot., ECF No. 14.) Further, Defendants Johnson & Johnson ("J&J") and Johnson & Johnson Long Term Disability Plan (the "Plan") (collectively, "Defendants") moved for Summary Judgment. (J&J's Mot., ECF No. 15.) The Court has carefully considered the Parties' submissions and heard oral argument. For the reasons stated below, and for other good cause shown, Dunn's Motion is DENIED and J&J's Motion is GRANTED.

## I.   BACKGROUND

Plaintiff Mary Dunn is seeking the continued payment of long term disability benefits under the terms of the Plan. (J&J's Statement of Uncontested Material Facts ("J&J's SUMF") ¶ 1, ECF No. 15-2.)

Dunn was previously employed as a warehouse technician and operated a forklift in that capacity. Her employment began in 1994. She ultimately stopped working in 1997. She was approved for disability benefits in November 1997. Among the key provisions of the Plan, in order for benefits to continue after one year, the participant must be unable to work in **any occupation** (with or without reasonable accommodations) for which he or she is, or could be qualified by training, education or experience. (*Id.* at ¶ 13) (emphasis added). Further,

> The Plan Administrator by and through its authorized representatives, **reserves the right to reduce or terminate benefits at any time if it is determined that a participant no longer qualifies for benefits under the terms, conditions and definitions of the Plan.**

(*Id.* at ¶ 14) (emphasis added).

> The Plan Administrator . . . shall have the right to conduct evaluations of a Participant's medical status and eligibility for benefits under the Plan at any time while an application for benefits is pending, a Participant is receiving benefits or a claim or claim appeal is pending. It is the Participant's responsibility to provide . . . all information necessary to evaluate his or her medical condition and functional capacity.

(*Id.* at ¶ 15.)

Defendants terminated Dunn's benefits effective May 5, 2006, citing medical evidence that Dunn was capable of performing a sedentary job. (*Id.* at ¶ 48.) Dunn appealed the termination of benefits on May 15, 2006. (*Id.* at 54.) Her appeal was denied on July 11, 2006. Plaintiff appealed again on January 3, 2008. (*Id.* at 58.) This appeal was similarly denied by letter dated February 26, 2008. (*Id.* at 72). Thereafter, on April 2, 2008, Dunn brought suit. (*Id.* at 74.) Specifically, this matter was previously before the Court in Civ. Action No. 3:08-cv-1632 (FLW). Cross-motions for summary judgment were filed therein, and resulted in the Honorable Freda L. Wolfson, U.S.D.J., ("Judge Wolfson") issuing an Order and Opinion dated September 9, 2009. Judge Wolfson remanded the matter in order for factual findings to be developed

regarding Dunn's "physical capacity" and the types of "sedentary jobs plaintiff is capable of working." ("Wolfson Op.").[1]

On March 3, 2010, Defendants issued a final appeal determination denying Plaintiff's application for benefits. (Dunn's Statement of Uncontested Material Facts ("Dunn's SUMF") ¶ 6, ECF No. 14-2.) Plaintiff administratively appealed on August 18, 2010. (*Id.* at ¶ 22.) On October 18, 2010, additional information was sought from Plaintiff. (*Id.* at 30.) A November 1, 2010 letter from Plaintiff's attorney was sent in response to the request for additional information. (*Id.* at ¶¶ 31-33.) After Plaintiff's counsel sent an additional letter on November 29, 2010, Defendants issued a determination on February 3, 2011, again denying her benefits. (*Id.* at ¶¶ 33-37.) The Complaint in the matter presently before the Court was filed on July 7, 2011. (ECF No. 1.)

At present, Plaintiff moves for Summary Judgment arguing that Defendants have "clearly and intentionally abused [their] discretion in denying her benefits." (Dunn's Brief in Support of Plaintiff's Motion for Summary Judgment ("Dunn's Br.") at 18, ECF No. 14-1.) Defendants, however, argue that the claim determination was supported by substantial evidence within the administrative record and that Plaintiff cannot meet her burden of establishing that Defendants' claim determination was arbitrary or capricious. (Legal Memorandum in Support of Defendants' Motion for Summary Judgment ("J&J's Br.") at 1, ECF No. 15-1.)

---

[1] In remanding the matter, Judge Wolfson noted Defendants' failure to mention Dunn's Social Security benefits as a procedural abnormality. However, in their March 3, 2010 letter, Defendants state that the Social Security Administration's benefits determination was made in 1999, and therefore predated Defendants' determination to terminate benefits as of May 5, 2006. Further, Defendants distinguished the definition of disability for purposes of the Social Security Administration, and for continued benefits under the Plan. Specifically, the Plan requires disability that precludes the claimant from performing "any occupation" while the Social Security Administration defines disability in terms of an individual's inability to obtain gainful employment. (J&J's SUMF at ¶ 82.)

## II.     Legal Standard and Analysis

### A.     Standard for Summary Judgment

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A district court considers the facts drawn from the "materials in the record, including depositions, documents, electronically stored information, affidavits . . . or other materials" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c)(1)(A); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986).  More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the non-moving party. *Id.* at 248-49. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48.

### B.     Standard of Review

A denial of ERISA benefits is reviewed under the arbitrary and capricious standard. *Brandeburg v. Corning Inc. Pension Plan for Hourly Emps.*, 243 Fed. App'x 671, 672-73 (3d Cir. 2007); *Mitchell v. Eastman Kodak Co.*, 113 F.3d at 437. The Court exercises only limited review of a plan's decision under the arbitrary and capricious standard. Under the arbitrary and capricious (or abuse of discretion) standard of review, the district court may overturn a decision of a plan administrator only if it is without reason, unsupported by substantial evidence or

4

erroneous as a matter of law. *Mitchell*, 113 F.3d 433, 437 (3d Cir. 1997). The Court is not free to substitute its own judgment for that of the administrator's in determining eligibility for plan benefits. *Fahringer v. Paul Revere Ins. Co.*, 317 F. Supp. 2d 504, 510 (D.N.J. 2003) (citations omitted). Both Parties recognize that the arbitrary and capricious standard controls the Court's analysis. (Dunn's Br. at 18-19; J&J's Br. at 6-9.)

### C.   Analysis

#### 1.   Summary of the Record

Defendants argue that their decision to deny her benefits is predicated upon substantial evidence. In support of same, Defendants rely upon a Claim Questionnaire Follow-Up of June 27, 2005. (J&J's Br. at 12.) Plaintiff indicated in the questionnaire that she can complete almost all of her personal care needs, some of which she utilizes "tools" for, and that she drives five miles, three times a week. (Admin. Rec. 1092-97.)[2] She stated that she engages in recreational activities including, computer activities, knitting, playing cards, reading, and watching movies, when her feet are "up and comfortable." (*Id.*) Plaintiff further indicated that she had previously earned an Associate Degree in Business Management. (*Id.*) With regard to maintaining her home, without a specific question prompting the response, Plaintiff indicated that she lives alone, "so basically if I don't do it, it won't get done" and that once in a while, she has a maid who helps her out. (*Id.*)

On January 31, 2006, an Independent Medical Evaluation ("IME") was conducted of Plaintiff. (Admin. Rec. 1131-34.) John D. Costino, D.O., conducted the IME, and concluded that:

---

[2] The Administrative Record, included as Exhibit 2 to the Affidavit of Richard McDonald, spans over 1000 pages, and represents ECF Nos. 15-3, and 16-1 through 16-17. For ease of reference, the Administrative Record will be referred to by Bates Stamp Number.

> Based upon a reasonable degree of medical probability, in conjunction with this examination, and the patient's history, it is my opinion that she is capable of **working in the sedentary position for eight hours per day taking her current medication.**

(*Id.*) (emphasis added).

On February 24, 2006, Patrick McHugh, Ph.D., a clinical psychologist, conducted a second IME and a Mental Status Examination. He found that there were indications that Plaintiff suffered from bipolar disorder, and possibly attention deficit disorder. (*Id.* at 1128.) However, his report indicated that neither of these would prevent her from working in a sedentary position while on medication. (*Id.*) Plaintiff's benefits were therefore terminated.

Dunn appealed, relying upon Stephen Burnstein, D.O., who stated in his April 28, 2006 correspondence to Plaintiff's counsel that:

> It is my opinion, again, within a reasonable degree of medical certainty, that Mary is unable to return to her position as a warehouse person at this time and more than likely for the rest of her life. It is further my opinion and again within a reasonable degree of medical certainty, that she is unable to sustain any sort of employment and is totally and permanently disabled based on a combination of her arthritic and musculoskeletal problems as well as her medical problems in general. Any occupation which would force her to sit for long periods of time would result in gelling of the knees, hands and spine and would increase her pain. In addition, she is taking OxyContin in a high dosage daily and this would impair her concentration, memory and would also significantly interfere with her cognitive function in any job position.

(*Id.* at 297-98.)

On July 11, 2006, James Leyhane, M.D., reviewed Dunn's file which was forwarded by Defendants, and opined that the "preponderance of the evidence favor[s] RTW [return to work] in sedentary job." (*Id.* at 330-31.) (J&J's SUMF at ¶ 57.)  By correspondence, issued on the same date of July 11, 2006, Defendants "determined that the documentation does not substantiate [Dunn's] disability as defined by the Johnson & Johnson LTD Plan." (*Id.* at 331-32.)

6

In support of her second appeal, Dunn submitted her pharmacy records and correspondence from Jay Schmulowitz, Ph.D. dated December 27, 2007. (*Id.* at 55-99.) Dr. Schmulowitz stated that Dunn's results on the Beck Depression Inventory were indicative of severe depression. (*Id.* at 97-99.) Dunn reported to Dr. Schmulowitz that she attends Alcoholics Anonymous six to seven times a week. (*Id.*) Further, based on her reporting, Dr. Schmulowitz stated that Dunn may suffer from visual and auditory hallucinations. (*Id.*) Dunn also reported that she had "no tolerance for people." (*Id.*) Dr. Schmulowitz concluded:

> The results of today's psychological evaluation indicate that Ms. Dunn is diagnosed with bipolar disorder, paranoia, and pain disorder. These diagnoses . . . reflect her inconsistencies in daily function and overall unreliability in being able to perform tasks. Thus, from a psychological viewpoint today's evaluation indicates that Ms. Dunn is unable to consistently and reliably perform any type of meaningful employment.

(*Id.* at 99.)

In response to Dunn's second appeal, Defendants "conducted a thorough review of Dunn's entire file and sought two additional independent medical evaluations." (J&J's Br. at 15.)

Ara H. Dikranian, M.D., acting on a referral made on January 29, 2008, stated in his report that his independent medical review resulted in his recommendation that:

1. The claimant was not totally disabled, based on the provided definition, as of March 26, 2006.

2. The medications the claimant was taking at the time of the denial were not impairing her to the point where she was unable to do any job with or without a reasonable accommodation.

(Admin. Rec. 1337.)

Dr. Dikranian concluded that, "taken together, neither her diagnosed diseases nor her therapies constitute total disability or support an inability to perform a sedentary occupation with reasonable accommodations to stretch her knee at will to prevent stiffness during a workday." (*Id.* at 1339.)

Jean Dalpe, M.D., also conducted an independent medical review. His recommendations were analogous to that of Dr. Dikranian, and he opined that Dunn was not totally disabled as of March 26, 2006, and that the medications she was taking did not impair her to the point she was unable to perform any job with or without reasonable accommodation. (*Id.* at 1346.) Based on the reviews of Dr. Dikranian and Dr. Dalpe, the determination to discontinue Dunn's LTD benefits was upheld, and Dunn's appeal was denied.

Thereafter, Dunn filed a single-count complaint seeking the continuation of benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). As a result of the cross-motions for summary judgment filed therein, the Court remanded instructing Defendants to "connect the medical evidence to Dunn's actual physical capacity." (Wolfson Op. at 23.)

In the Opinion remanding the case, Judge Wolfson noted that its holding "does not compel Defendant to hire a vocational expert and engage in a full blown vocational assessment. Rather, Defendant must make adequate factual findings to substantiate its conclusion that Plaintiff is capable of sedentary work." (*Id.*)

As a result of the remand, Defendants obtained a Transferable Skills Analysis which identified that Dunn could perform the following positions:

- Admissions Gate Attendant/Toll Collector
- Ticket Taker
- Information Clerk
- Parking Lot Attendant/Booth Cashier
- Front Desk Security/Gate Guard
- Switchboard Operator/Receptionist

(Admin. Rec. 1278, 1280-81.)

In conjunction with the vocational assessment of Plaintiff, she requested that the alleged osteoarthritis in her hands be considered. (*Id.* at 1284-86.) By way of response, Dr. Kevin

8

Trangle, analyzed all of the medical documentation and concluded, "[a]lthough she complained of pain and discomfort and the inability to write. . . there has been no evidence of osteoarthritis in her hands at any point in time. . . ." (*Id.* at 1289.)

Dr. Trangle further reported that Dunn "appears to be capable of sedentary activity; she actually appears to have the ability to work in a light duty category." (*Id.* at 1292.) He noted that "there is nothing to indicate she could not perform any or all of the suggested job positions noted in the Transferable Skills Analysis." (*Id.* at 1293.) Lastly, Dr. Trangle opined that "[c]learly, she is able to function in the sedentary category both from a psychological and psychiatric perspective . . . as well as from a physical perspective based upon the objective evidence available and the records." (*Id.*)

In reliance upon the Transferable Skills Analysis and Dr. Trangle's review, Dunn's appeal was denied by way of letter dated March 3, 2010. (*Id.* 1294-97.)

By way of letter dated August 18, 2010, Plaintiff requested that the denial be reconsidered in light of Plaintiff's alleged "severe weakness in handling jobs which would require her to interact with the public." (*Id.* at 1300-01) (internal quotation marks omitted).

Plaintiff's counsel then submitted for Defendants' review the Interview Evaluation Notes of Legal Medical Staffing which analyzed her prior work history, noting that she was terminated from two of her previous positions. (*Id.* at 1303.) The Evaluation Notes indicated that her arrival at the interview an hour early despite being dependent upon a "disability bus" was indicative of her initiative, but an inability to commit to a schedule could hinder her ability to interview, or maintain a work schedule. (*Id.* 1303-04.)

Where 90 minutes is usually sufficient for completion of six skill evaluations administered by Legal Medical Staffing, Dunn completed two. (*Id.* at 1304.) On the Customer

9

Service Test, she scored below the national average. (*Id.*) On the Work Place Test, her score was moderate overall, and she scored a 100% in the category dedicated to Detail Orientation. (*Id.*)

Legal Medical Staffing did not find Dunn qualified for the positions outlined in the Transferable Skills Analysis. (*Id.* at 1306.) By way of example, Legal Medical Staffing opined that Dunn cannot perform the duties of a Guard due to the considerable use of arms and legs required; cannot perform the duties of a cashier due to the finger dexterity and wrist finger speed required; and cannot perform the duties of a Parking Lot Attendant due to her inability to operate a vehicle. (*Id.*) Further, Legal Medical Staffing found that her Work Place Test results would disqualify her from being a Cashier due to her low math skills and her low grammar/spelling skills would prevent her from being a Switchboard Operator. (*Id.*)

At the request of the Plan, another vocational review was conducted on Dunn. Marisa Brienza, M.Ed. performed the review and concluded that "Ms. Dunn presents with employment potential." (*Id.* at 1324.) Brienza determined that "although [Dunn] has not worked competitively in recent years, her skills could easily transfer into the field or positions listed above and attached to this report." (*Id.* at 1322.) These positions included: Dispatcher, Office Clerk, Clerical/Registrar- Patient Access Representative, and Collections Specialist. (*Id.* 1319-21.) Brienza noted that these positions were similar to those noted in the Transferable Skills Analysis.

On February 3, 2011, Defendants sent a letter communicating that the determination to discontinue benefits remained unchanged. (*Id.* at 1327-31.)

Plaintiff argues that Defendants (1) failed to procure an updated psychological evaluation, (2) failed to perform an in-person evaluation despite requests to do so, (3) selectively

10

cited from the opinions of its own experts, and (4) selectively omitted data which contradict their position. (Dunn's Br. at i.)

    2.  Analysis of the Record

With regard to Defendants declining to (1) procure a psychological exam, and (2) perform an in-person evaluation, "[d]efendants are not required to submit [Plaintiff] to either an independent medical examination or to conduct a vocational analysis." *Vega v. Cigna Grp., Ins.*, No. 06-5841 (JAP), 2008 WL 205221, at *7 (D.N.J. Jan. 23, 2008).

As to Plaintiff's allegations that Defendants were (3) selective in their reliance upon the opinions of its own experts, and (4) selectively omitting data which contradict their position, it is well established that: "[C]ourts have no warrant to require administrators to automatically accord special weight to the opinions of a claimant's physician." *Black and Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

The Plan determined that Dunn's condition did not meet the definition of total disability under the "any occupation" provision. "An insured's ability to satisfy the Plan's total disability from 'any occupation' provision is extremely difficult." *Fahringer*, 317 F. Supp. 2d at 517 (D.N.J. 2003). The Plan's determination is adequately supported by reason and substantial evidence. Defendants' decision is bolstered by, at least, the following aspects of the Administrative Record: 1) Plaintiff's Claim Questionnaire indicating she performs most of her household chores; 2) John D. Costino's Opinion that Plaintiff could work in the sedentary position for eight hours per day taking her current medication; 3) Dr. Leyhane's opinion that the preponderance of the evidence supported Dunn's return to work in a sedentary job; 4) Dr. Dikranian and Dr. Dalpe's opinions that Dunn was not totally disabled; 5) the Transferable Skills Analysis indicating that Dunn could perform the positions of Admissions Gate Attendant, Ticket

11

Taker, Information Clerk, Parking Lot Attendant/Booth Cashier, Front Desk Security/Gate Guard, and Switchboard Operator/Receptionist; and 6) Brienza's report finding that her skills were transferable to the positions of Dispatcher, Office Clerk, Clerical/Registrar-Patient Access Representative and Collections Specialist.

"The irreducible logical core of such a finding is that a claimant has a residual functional capacity that equals or exceeds the functional requirements of a feasible alternate occupation. These two determinations-the claimant's capacity and the occupation's requirements-must together be detailed enough to make rational comparison possible." *Havens v. Cont'l Cas. Co.*, 186 F. App'x 207, 212 (3d Cir. 2006). In *Havens*, the Third Circuit determined that the defendant was "silent" in regard to connecting the medical evidence to the plaintiff's physical capacity. *Id.* at 213. The Third Circuit also determined that there was no showing of how the alternative jobs were selected, no discussion of the physical requirements of the occupations, no description of the proposed alternative positions, and no indication of how the occupations were selected by the vocational expert.

With the arbitrary and capricious standard guiding the Court's analysis,[3] *Havens* is distinguishable from the case at bar. For example, evidence in the record supports that: with consideration of her medical and psychological diagnoses, Dunn is capable of working in the sedentary position and ambulating for 10 minutes once or twice an hour, and lifting up to 10 pounds; In addition Dunn (1) has obtained her GED, (2) has obtained a degree in Business Management from Camden County College, (3) has recreationally made use of a computer, and (4) is detail oriented. Thus, per the report of Brienza, Dunn has the physical capacity and many of the skills needed to become successfully employed within today's labor market at the entry

---

[3] Of note, the Third Circuit in *Havens* and Judge Wolfson in her previous opinion performed their analysis under a less deferential standard of review than the Court applies in the instant matter.

level. By way of example, the requirements for a Clerical/Registrar-Patient Access Representative in the non-emergency room context include "registering patients by obtaining individual identifying data" and "ensuring that proper authorization for treatment/admission has been obtained prior to services being rendered." This position has a sedentary physical demand level and requires some limited standing.

Here, the Transferable Skills Analysis also included an explanation of how the proposed alternative working positions were compiled. Brienza, by way of her report, states that the position of Warehouse Worker was used to formulate the Transferable Skills Analysis, since this position would be considered her past relevant work history. (Admin Rec. at 1315.) Dunn's position as a Warehouse Worker was correlated with the job title of Stock Clerks—Stockroom, Warehouse, or Storage Yard for purposes of the analysis. (*Id.*) Dunn's residual limitations were set at the sedentary level based on the medical opinions that Dunn could work at a sedentary level without any cognitive difficulties. (*Id.*) By way of a computer program, *OASYS*, Dunn's education, limitations, and work history were compiled and yielded no positions in the "closest" or "good" categories, but four positions were noted as "fair positions" within her basic capacities, and 39 positions were set forth at the "potential" level. *(Id.* at 1315-16.*)* Labor market research was then compiled using multiple websites. (*Id.* at 1318.) The product of said labor market research yielded four specific job options. (*Id.* 1318-21.) The recruiters and/or Human Resource representatives were contacted to verify, where possible, that the information was accurate. (*Id.*) In addition to the four positions produced by Brienza's independent research, Brienza also noted that the additional five positions set forth in Ms. Forest's TSA were similar. (*Id.* at 1322-23.)

The Court concludes there is a reasoned basis for Defendants' determination, based upon the record and in consideration of the claimant's limitations, that Dunn could perform the occupational requirements of one or more of the aforementioned positions. On the previous remand in this matter, Defendants were required to make adequate factual findings to substantiate their conclusion that Plaintiff is capable of sedentary work. Defendants' TSA, VoCare report, and the report of Dr. Trangle support a factual finding that Plaintiff is capable of sedentary work.

While there is evidence to support Plaintiff's theory of total disability in the record, the fact that Defendants considered the evidence supporting the position that Plaintiff is not totally disabled more persuasive is "not conclusive of arbitrary and capricious conduct." *Fahringer*, 317 F. Supp. 2d at 518. Further, as here, where the Plan's decision is supported by substantial evidence, "[t]he court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." *Lucash v. Strick Corp.*, 602 F. Supp. 430, 434 (E.D. Pa. 1984), *aff'd*, 760 F.2d 259 (3d Cir. 1985). Defendants' determination is affirmed.

## III.   CONCLUSION

For the reasons set forth above, and for other good cause shown, it is hereby ordered that Plaintiff's Motion for Summary Judgment is DENIED and Defendants' Motion for Summary Judgment is GRANTED. An order will be entered consistent with this Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated:

14